# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 1
Not Reported in F.Supp.2d, 1998 WL 748399 (N.D.Ill.)
**1998 WL 748399 (N.D.Ill.)**

**H**Saniat v. City of Chicago
N.D.Ill.,1998.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Thomas SANIAT, Plaintiff,
v.
CITY OF CHICAGO, an Illinois Municipal
Corporation; E.A.R. Towing Co.; Eileen Carey,
Commissioner of the Department of Streets and
Sanitation; William) Bresnahan, Assistant
Commissioner of the Department of Streets and
Sanitation; Delores Barret, Hearing Officer
Department of Streets and Sanitation; Officers
Richard Gutierrez, # 7690; A. Kennedy, # 15376,
Patrick Sierzega, # 5614; G. Donatello, # 7003;
Dennis Hurd, # 5117; Sgt. Dolan, # 1519; Medina, #
7400; Cmdr. Ivanjack; J. Gibson, # 5192; G. Perez, #
6913; and University of Illinois) Security Personnel,
Melons, # 765; and Lt. Skrocres, # 3, Defendants.
**No. 96 C 5191.**

Oct. 16, 1998.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, J.
**\*1** This suit arises from three arrests of plaintiff
Thomas Saniat ("Saniat") and the seizure of his
property during those arrests. Saniat has sued a
myriad of defendants for violating his constitutional
rights as proscribed by 42 U.S.C. § 1983 ("section
1983"). Certain defendants, including Environmental
Auto Removal, Inc. ("EAR Towing"), University of
Illinois employee Richard Skrocki ("Skrocki"),[FN1]
and Officers Dolan, Donatello, Gibson, Gutierrez,
Hurd, Kennedy, Medina, Perez, and Sierzega have
moved to dismiss the Second Amended Complaint.
For the reasons provided in this Memorandum
Opinion and Order, the Court grants in part and
denies in part the motion to dismiss.

> FN1. Although in the Second Amended
> Complaint Saniat misspells Richard
> Skrocki's name as "Skrocres," the Court will
> use his correctly spelled name throughout
> this Memorandum Opinion and Order.

*Background*

Chicago police officers arrested Saniat three times on
August 17 and 18, 1994 for criminal trespass to land
and seized his property in connection with those
arrests. The three charges of trespassing were
dismissed with prejudice by order of the Circuit
Court of Cook County, Illinois on or about
September 15, 23, and 24, 1994.

On August 19, 1996, Saniat filed a *pro se* original
Complaint [FN2] and his application to proceed *in forma
pauperis* and on September 26, 1996, the Court
granted an amended application to proceed *in forma
pauperis.*On January 27, 1997, Saniat filed an
Amended Complaint terminating a defendant and
adding numerous defendants.[FN3]On February 9, 1998,
Saniat filed a Second Amended Complaint adding
defendants Skrocki and Officers Dolan, Donatello,
Gibson, Kennedy, Medina, and Perez, as well as
other defendants who have not joined the motion to
dismiss. First. EAR Towing, Skrocki, and Officers
Dolan, Donatello, Gibson, Kennedy, Medina, and
Perez contend that Saniat's claims against them are
barred by the statute of limitations for section 1983
actions. Second, EAR Towing, Skrocki, and Officers
Dolan, Donatello, Gibson, Gutierrez, Hurd, Kennedy,
Medina, Perez, and Sierzega argue that Saniat's
claims are barred by Fed.R.Civ.P. ("Rule") 4(m)
because they were not served with a complaint and
summons within the time period prescribed by that
rule.

> FN2. In the Complaint, Saniat named as
> defendants the City of Chicago, and its
> Officers, Employees, and Agents, E.A.R.
> Towing Company, its owners, employees,
> and agents, University of Illinois, and its
> Officers, Employees, and Agents, and John
> Doe Fence Company, and its owners,
> employees, and agents.

> FN3. In the Amended Complaint, Saniat
> named as defendants those named in the
> Complaint, except the John Doe Fence
> Company, its owners, employees, and
> agents, and added several defendants,
> including GF Structures Corp., and its

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 748399 (N.D.Ill.)
**1998 WL 748399 (N.D.Ill.)**

owners. employees, and agents, Richard M. Daley, Susan Sher, Eileen Carey, Dolores Barret, William Bresnahan, William Higgenbottom, Raymond Castro, Matt Rodroguez [sic], Anthony Ivanjack, Thomas Kuroski, Ricky Gutierrez, Dennis Hurd, Patrick Sierzega, Jorge Ortiz, Richard Alvarez, Officers Kelly and Crespo, Peter Poholik, Harold Ruther, Raymond Oruzco, Alexander Johnson, J. Stukel, Ann Lodel, Jim Henderson, J. Forester, and various John and Jane Does.

*Discussion*

First, EAR Towing, Skrocki, and Officers Dolan, Donatello, Gibson, Kennedy, Medina, and Perez have moved to dismiss the Second Amended Complaint based on statute of limitations grounds. On a motion to dismiss under Fed.R.Civ.P. ("Rule") 12(b)(6), all well-pleaded allegations in the complaint must be credited, with all reasonable inferences drawn in the plaintiff's favor. *See, e.g., Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir.1994)."Courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a section 1983 case."*Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir.1993)."Illinois has a two-year statute of limitations for personal injury claims."*Id.* (citing 735 ILL. COMP. STAT. ANN. 5/13-202 (West 1993))."Federal law, however, governs the accrual of claims."*Id.*"Section 1983 claims 'accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* (quoting *Wilson v. Giesen.* 956 F.2d 738, 740 (7th Cir.1992)).

*2 Saniat alleges the defendants' conduct that violated his constitutional rights occurred on August 17 and 18, 1994. Thus, his section 1983 action accrued on August 18, 1994 and the two-year statute of limitations expired as of August 19, 1996. *See*FED. R. CIV. P. 6(a). Saniat filed his original Complaint just under the wire on August 19, 1996.

With regard to EAR Towing, Saniat named it as a defendant in the original Complaint. The Court thus denies EAR Towing's motion to dismiss the Second Amended Complaint on statute of limitations grounds because the original Complaint was timely filed.

With regard to Skrocki and Officers Dolan, Donatello, Gibson, Kennedy, Medina, and Perez, the issue is a bit more complicated because they were not named as defendants until Saniat filed a Second Amended Complaint on February 9. 1998. Thus, Saniat's claims against them are barred unless: (a) the Second Amended Complaint relates back to the original Complaint under Rule 15(c)(3); or (b) the statute of limitations is equitably tolled.

Rule 15(c) provides, in pertinent part:

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

FED. R. CIV. P. 15(c). In *Wood v. Worachek,* the Seventh Circuit defined the parameters of Rule 15(c)(3)(B)'s mistake requirement. 618 F.2d 1225, 1229 (7th Cir.1980):
[A]mendment with relation back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued. But a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run.

*Id.* Adhering to its holding in *Wood v. Worachek,* the Seventh Circuit stated that Rule 15(c)(3)"permits an

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 748399 (N.D.Ill.)
**1998 WL 748399 (N.D.Ill.)**

amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where ... there is a lack of knowledge of the party." *Worthington v. Wilson,* 8 F.3d 1253, 1256 (7th Cir.1993)."Thus, in the absence of a mistake in the identification of the proper party, it is irrelevant for the purposes of [Rule 15(c)(3) ] whether or not the purported substitute party knew or should have known that the action would have been brought against him."*Id.*

*3 Having construed Saniat's *pro se* original Complaint liberally, the Court finds that Saniat did not make a mistake concerning the identities of Skrocki and Officers Dolan, Donatello, Gibson, Kennedy, Medina, and Perez. The case upon which Saniat relies, *Donald v. Cook County Sheriff's Department,* is inapposite because in that case, the *pro se* prisoner plaintiff filed his original complaint under the mistaken belief that "by suing the Sheriff's Department, he effectively sued everyone involved in precipitating his injuries."95 F.3d 548, 557 (7th Cir.1996). Thus, the plaintiff in *Donald* satisfied Rule 15(c)(3)'s mistake requirement. In this case, the record does not show that Saniat held a similar mistaken belief. Saniat merely did not know the identities of Officers Dolan, Donatello, Gibson, Kennedy, Medina, and Perez when he filed the original Complaint, which named some individual officers such as Gutierrez, Hurd, Sierzega, Ortiz and Alvarez, but not others, describing the others as "John Doe and Mike Moe ... whose identities are as yet unknown to plaintiff."(Compl.¶ 21.) Further, unlike Donald, Saniat was not incarcerated and was free to investigate the identities of the defendants.

In addition, it is clear that Saniat did not make a mistake as to the identity of Skrocki, an officer for the University of Illinois, when he filed the original Complaint. In the original Complaint, Saniat's claim against University of Illinois at Chicago and its officers, employees, and agents states in its entirety: "On 8/17/94 and 8/18/94 University of Illinois at Chicago, and Ann Lodel did partake in the land grab/taking with 'Doe Fencing Company' and its employees and agents, causing loss of personalties and use of land by fencing actions, working jointly with the City of Chicago and violating due process."(Compl.¶ 29.) Thus, Saniat specifically

named Ann Lodel, an employee of the University of Illinois at Chicago, as an individual defendant, but not Skrocki, which belies Saniat's argument that he believed suing the entity was sufficient. Further, in the Amended Complaint that preceded the Second Amended Complaint in which Saniat first named Skrocki as a defendant, he described University of Illinois officers as "John and Jane Does ... whose identities are as yet unknown to plaintiff."(Am.Compl.¶ 37.) Because the record shows that Saniat did not make a mistake regarding the identities of Skrocki and Officers Dolan, Donatello, Gibson, Kennedy, Medina, and Perez, but merely lacked knowledge of their identities when he filed the original Complaint, the Court finds Rule 15(c)(3) inapplicable. Therefore, Saniat is barred by the statute of limitations from bringing his claims against them because such claims do not relate back to the original Complaint.

In the alternative, Saniat argues that if Rule 15(c)(3) is inapplicable, the Court should apply equitable tolling principles to prevent his claims against Skrocki and Officers Dolan, Donatello, Gibson, Kennedy, Medina, and Perez from being barred. In a section 1983 case, courts apply "the tolling laws of the state where the injury occurred."*Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir.1993). In addition, the federal doctrine of equitable tolling is read into every federal statute of limitations including state statutes adopted by federal law. *See Smith v. City of Chicago Heights,* 951 F.2d 834, 838 (7th Cir.1992). The doctrine of equitable tolling allows a plaintiff to avoid a statute of limitations bar "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim."*Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990).

*4 The Court finds that Saniat did not exercise due diligence in learning the identity of defendants Skrocki, Dolan, Donatello, Gibson, Kennedy, Medina, and Perez. Two years after the alleged incidents, Saniat filed his original Complaint on August 19, 1996, and over one and a half years later, he filed his Second Amended Complaint which, for the first time, identifies these defendants by name.[FN4]Such a delay is unreasonable in light of the fact that Saniat was free to conduct his own investigation and, in fact, was capable of identifying at least twenty other defendants by name before he filed an Amended Complaint on January 27, 1997.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 748399 (N.D.Ill.)
**1998 WL 748399 (N.D.Ill.)**

Further, Saniat's contention that his original *pro se* status alone warrants equitable tolling is unpersuasive. *See Cosby v. United Air Lines, Inc.*, No. 95 C 6655, 1996 WL 204323, at *3 (N.D.Ill. Apr. 24, 1996) ("A plaintiff's *pro se* status is not an independent basis for equitable tolling."). Moreover, that the Court appointed five different attorneys to Saniat's case and he moved to vacate the appointment of four of them does not warrant an application of equitable tolling principles. *See id.*("Delay caused by a plaintiff's attorney is not an independent basis for equitable tolling.") Therefore, because the record does not show that Saniat exercised due diligence in identifying Skrocki, Dolan, Donatello, Gibson, Kennedy, Medina, and Perez, the Court will not equitably toll the statute of limitations and, thus, he may not avoid the statutory bar.

> FN4. Thus, Saniat is, in effect, asking this Court to toll the two year statute of limitations for more than one and a half years.

Second, EAR Towing, Skrocki, and Officers Dolan, Donatello, Gibson, Gutierrez, Hurd, Kennedy, Medina, Perez, and Sierzega have moved to dismiss the Second Amended Complaint based on insufficiency of service of process. With regard to defendants Skrocki, Dolan, Donatello, Gibson, Kennedy, Medina, and Perez, the Court denies the motion to dismiss based on insufficiency of service of process as moot because the Court has already determined that Saniat's claims against them are barred by the statute of limitations. Thus, the following discussion concerns defendants EAR Towing, Gutierrez, Hurd, and Sierzega only.

Rule 12(b)(5) provides that a defendant may move to dismiss the complaint for "insufficiency of service of process." FED. R. CIV . P. 12(b)(5). Rule 4(m) states that "[i]f service of summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court ... shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."FED. R. CIV. P. 4(m)."[W]here good cause is shown, the court has no choice but to extend the time for service, and the inquiry is ended."*Panaras v. Liquid Carbonic Indus.*

*Corp.*, 94 F.3d 338, 340 (7th Cir.1996)."If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time."*Id.*

*5 Clearly, Saniat has not complied with Rule 4(m). Saniat filed the original Complaint on August 19, 1996 with his application to proceed *in forma pauperis,* the Court granted his application on September 26, 1996, which started the Rule 4(m) clock ticking, see *Robinson v. America's Best Contacts & Eyeglasses*, 876 F.2d 596, 598 (7th Cir.1989)), and he failed to serve the defendants by January 24, 1997. However, on December 10, 1997, the Court in its discretion granted Saniat an extension up to and including February 10, 1998 to serve the defendants. (Min. Order of 12/10/97.) Saniat nonetheless failed to properly serve EAR Towing, Gutierrez, Hurd, and Sierzega by the extended deadline.

Further, Saniat fails to show good cause for the delay in attempting to serve the defendants by the extended deadline. "While there is not a precise test for determining when good cause exists, a plaintiff's attempts at service need to be '[a]t the very least ... accompanied by some showing of reasonable diligence' before good cause may be found."*Scott v. Guarantee Reserve Life Ins. Co.*, No. 95 C 6622, 1998 WL 177954, at *3 (N.D.Ill. Apr. 7, 1998) (quoting *Bachenski v. Malnati*, 11 F.3d 1371, 1377 (7th Cir.1993))."Neither inadvertent failure to serve a defendant within the statutory period nor half-hearted efforts to serve a defendant establish good cause."*Id.*

As mentioned above, on December 10, 1997, the Court granted Saniat an extension up to and including February 10, 1998 to serve the defendants. Despite this generous extension of time, Saniat, with the benefit of appointed counsel, waited until the last possible day to serve defendants, which resulted in the failure to serve them before the deadline.

To make matters worse, Saniat did not perform personal service on each officer sued in his or her individual capacity, but instead he improperly served complaints and summonses on the Superintendent's Office. *See*FED. R. CIV. P. 4(e); 735 ILL. COMP. STAT. § 5/203 (West 1993). Although Saniat relies on *Young v. City of Chicago*, No. 94 C 5753, 1995

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 748399 (N.D.Ill.)
**1998 WL 748399 (N.D.Ill.)**

WL 562093. at *5 (N.D.Ill. Sept. 21, 1995), for the proposition that service of a summons and complaint on the Superintendent's Office constitutes proper service on an individual officer, *Young* is distinguishable because the parties in *Young* explicitly agreed before the court that the Superintendent's Office would serve the individual officer and in the instant case there was no such agreement. Moreover, in the absence of such an agreement, the belief that service on an employer may constitute service on an individual, where the rules for service do not provide for such a method, does not establish good cause. *See Tuke v. United States,* 76 F.3d 155, 156 (7th Cir.1996) ("Failure to read a rule is the antithesis of good cause.") Because Saniat's failure to perform service of process by February 10, 1998 was due to the last-minute nature of his attempt to serve defendants and his misguided belief that he could serve individual officers by serving the Superintendent's Office, the Court finds that Saniat failed to exercise reasonable diligence in attempting to serve EAR Towing, Gutierrez, Hurd, and Sierzega by the deadline.

*6 Next, the Court determines whether to dismiss the action [FN5] or direct that service be effected within a specified time. " 'Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." ' *Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 341 (7th Cir.1996) (quoting FED. R. CIV. P. 4(m), Advisory Committee Note, 1993 Amendments).

> FN5. Although a 12(b)(5) dismissal pursuant to Rule 4(m) is a dismissal without prejudice, in this case, because the statute of limitations has expired, a dismissal pursuant to Rule 4(m) would effectively end the action against defendants EAR Towing, Gutierrez, Hurd, and Sierzega.

Defendants EAR Towing, Gutierrez, Hurd, and Sierzega have not evaded service or concealed a defect in attempted service. Relief is justified, however, because the two-year statute of limitations would bar the refiled action and the unique circumstances in this case warrant such relief. Although the Court does not sanction Saniat's waiting until the day before the extended deadline to serve

defendants or his use of improper methods of service which delayed service of defendants, the Court recognizes that, in the end, Saniat missed the extended deadline in some cases by as few as three days. (*See* Defs.' Mot. Extension Time Ans. Otherwise Respond Pl.'s Second Am. Compl. ¶ 2 ("Defendant Police Officers were served on dates ranging from February 13, 1998 to February 27, 1998).) Given that the Court granted Saniat the extension of time to serve the defendants, it hardly would seem equitable to shut the court house doors and bar relief for his having missed the deadline by a matter of a few days or weeks. Thus, the Court denies the 12(b)(5) motion to dismiss as to defendants EAR Towing, Gutierrez, Hurd, and Sierzega.

*Conclusion*

For the forgoing reasons, defendants' motion to dismiss is granted in part and denied in part. The Court: (1) grants the Rule 12(b)(6) motion to dismiss based on statute of limitations grounds as to defendants Skrocki, Dolan, Donatello, Gibson, Kennedy, Medina, and Perez; (2) denies the Rule 12(b)(6) motion to dismiss based on statute of limitations grounds as to defendant EAR Towing; (3) denies the Rule 12(b)(5) motion to dismiss based on insufficiency of service of process as moot with regard to defendants Skrocki, Dolan, Donatello, Gibson, Kennedy, Medina, and Perez; and (4) denies the Rule 12(b)(5) motion to dismiss as to EAR Towing, Gutierrez, Hurd, and Sierzega.

N.D.Ill.,1998.
Saniat v. City of Chicago
Not Reported in F.Supp.2d, 1998 WL 748399 (N.D.Ill.)

END OF DOCUMENT

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2006 WL 2853597 (N.D.Ill.)
**2006 WL 2853597 (N.D.Ill.)**

**C**Brooks v. Union Pacific R.R.
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Howard BROOKS and Ronantoine Wilson,
Plaintiffs,
v.
UNION PACIFIC RAILROAD, a corporation doing
business in Illinois, and Dan Milovanovic,
personally, Defendants.
**No. 05 C 4982.**

Oct. 2, 2006.

Anderson J. Ward, The Law Offices of Anderson J.
Ward, P.C., Letheal Neal Johnson, Anderson J.
Ward, P.C., Mokena, IL, for Plaintiffs.
Thomas William Cushing, Union Pacific Railroad
Company, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

JAMES F. HOLDERMAN, Chief Judge.
*1 Before the court is defendant Dan Milovanovic's
("Milovanovic") Motion to Dismiss Counts II, IV,
VI, VIII, X and XII of Plaintiffs' Complaint Pursuant
to Federal Rule of Civil Procedure 12(b)(5). (Dkt.
No. 34). For the reasons discussed below,
Milovanovic's motion is granted and Counts II, IV,
VI, VIII, X and XII are dismissed without prejudice.

*BACKGROUND*

On July 5, 2005, plaintiffs Howard Brooks and
Ronantoine Wilson ("Plaintiffs") filed a thirteen-
count Complaint in the Circuit Court of Cook County
against defendants Union Pacific Railroad ("Union
Pacific") and Milovanovic (a Union Pacific police
officer named in his individual capacity) alleging
false imprisonment, assault, battery, defamation,
intentional infliction of emotional distress,
negligence, and malicious prosecution in connection
with Plaintiffs' arrests on July 6, 2004 for alleged
burglary of Union Pacific property. (Compl. ¶¶ 1,
10). The case was removed to federal court on
August 29, 2005 on the basis of diversity of

citizenship jurisdiction under 28 U.S.C. § 1332(a).[FN1]
(Notice of Removal at 1 (Dkt. No. 1)). Despite
numerous filings by attorneys representing Plaintiffs
and Union Pacific over several months, Milovanovic
was not served with process in this case until July 6,
2006. Approximately three weeks later, on July 26,
2006, attorney Thomas Cushing ("Cushing") entered
an appearance as counsel for Milovanovic and filed
Defendant Dan Milovanovic's Motion to Dismiss
Counts II, IV, VI, VIII, X and XII of Plaintiffs'
Complaint Pursuant to Federal Rule of Civil
Procedure 12(b)(5). ("Motion to Dismiss" (Dkt. No.
34)). In his Motion to Dismiss, Milovanovic argues
that he was not served with process within 120 days
of the filing of the Complaint, as required by Federal
Rule of Civil Procedure 4(m), and Plaintiffs' claims
against him should therefore be dismissed. (Dkt. No.
34 ¶¶ 4, 7).

> FN1. In Plaintiffs Howard Brooks and
> Ronantoine Wilson's Response to Defendant
> Dan Milovanovic's Motion to Dismiss
> Counts II, IV, VI, VIII, X and XII of
> Plaintiffs' Complaint ("Response" (Dkt. No.
> 37)), Plaintiffs assert that "the federal court
> had concurrent jurisdiction over the matter
> based upon 28 U.S.C. §§ 1331 and 1343 as
> well as 28 U.S.C. § 1367."(Dkt. No. 37 at
> 3). Plaintiffs have not pleaded any federal
> causes of action or made any other
> references to federal law until this point in
> the litigation. In their Response, Plaintiffs do
> not specify any federal law which would
> support their jurisdictional claim. The court
> finds that its subject matter jurisdiction in
> this case is therefore based solely upon the
> provisions of 28 U.S.C. § 1332.

*LEGAL STANDARD*

Federal Rule of Civil Procedure 4(m)[FN2] sets forth the
time limit for service of process in the federal courts.
Under this rule, it is the plaintiff's burden to
demonstrate good cause for failing to execute service
within the statutory time period. Fed.R.Civ.P. 4(m);
*Panaras v. Liquid Carbonic Indus.* Corp., 94 F.3d
338, 341 (7th Cir.1996) (citing *Geiger v. Allen,* 850
F.2d 330, 333 (7th Cir.1988)). If the plaintiff meets

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2006 WL 2853597 (N.D.Ill.)
**2006 WL 2853597 (N.D.Ill.)**

this burden, the court must extend time for service of process. *Panaras, 94 F.3d at 340.* Good cause exists where there is "a valid reason for delay, such as the defendant's evading service."*Coleman v. Milwaukee Bd. of Sch. Dirs., 290 F.3d 932, 934 (7th Cir.2002).*

FN2.Rule 4(m) reads, in relevant part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

Even when the plaintiff has not demonstrated good cause, the court may, in its discretion, either extend time for service of process or dismiss the action without prejudice. *Panaras. 94 F.3d at 340.* As the Seventh Circuit clarified in *Panaras,* it is the district court's duty to clearly consider the consequences to both parties in making this decision. *Panaras, 94 F.3d at 341.* Factors to consider include: whether the applicable statute of limitations would bar the refiled action, whether the defendant evaded service or concealed a defect in attempted service, whether granting an extension of time in which to serve the defendant would prejudice the defendant's ability to defend the lawsuit, whether the defendant had actual notice of the lawsuit, and whether the defendant was eventually served. *Fed.R.Civ.P. 4(m),* Advisory Committee Note, 1993 Amendments; *Coleman, 290 F.3d at 934;Troxell v. Fedders of North America, Inc., 160 F.3d 381, 383 (7th Cir.1998); Panaras, 94 F.3d at 341.* Although the district court must inquire into these considerations, "the fact that the balance of hardships favors the plaintiff does not *require* the district judge to excuse the plaintiff's failure to serve the complaint and summons within the 120 days provided by the rule."*Coleman, 290 F.3d at 934* (emphasis in original). The court retains discretion to determine the appropriate outcome after consideration of these factors. *Troxell, 160 F.3d at 383.*

*ANALYSIS*

**2** As a preliminary matter, the court finds that Plaintiffs failed to serve Milovanovic in a timely manner. The Complaint in this case was filed on July 5, 2005. Service was not effected upon Milovanovic until a year and a day later, on July 6, 2006. Because Milovanovic was not served with process until over one year after the filing of the Complaint, Plaintiffs failed to serve Milovanovic in accordance with the timeline of 120 days set forth in Rule 4(m). Plaintiffs appear to read *Tuke v. United States, 76 F.3d 155, 157 (7th Cir.1996),* as granting them the entire statute of limitations period, plus 120 days, to serve Milovanovic, regardless of when the Complaint was actually filed. (Dkt. No. 37 at 3-4). This interpretation is erroneous and contrary to the plain language of Rule 4(m). In *Tuke,* the Seventh Circuit noted, "[a]lthough many states require service to be accomplished by the end of the statute of limitations, Rules 3 and 4(m) in combination give plaintiffs who sue under federal law the full period of limitations, plus 120 days, in which to achieve service."*Tuke, 76 F.3d at 157.* However, this generous time frame for service of process applies if, and only if, the plaintiff files his or her complaint on the last day of the statute of limitations and serves the defendant within 120 days, in accordance with Rule 4(m).*Tuke* in no way indicates that service of process is ever proper outside the parameters articulated in Rule 4(m), and Plaintiffs' assertion that they served Milovanovic in a timely manner is incorrect.

Having found that service of process on Milovanovic was untimely, the court must now address whether Plaintiffs have met their burden of demonstrating good cause for their failure to serve Milovanovic in accordance with the timeline set forth in Rule 4(m). Plaintiffs' first and only attempt to serve Milovanovic occurred in July of 2005 .[FN3]Because Milovanovic worked as a police officer for Union Pacific, and Plaintiffs did not have his home address, they attempted to effect service upon him at Union Pacific's address. (Dkt. No. 37 at 1-2). Plaintiffs admit that Union Pacific accepted service on its own behalf, but rejected the attempt to serve Milovanovic. (Dkt. No. 37 at 2). Plaintiffs do not assert that they made any other attempt to serve Milovanovic, although they appear to have been on notice that their attempt at serving Milovanovic was unsuccessful. At

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

the very least, Union Pacific's Answer of September 29, 2005 clearly stated that Milovanovic had not yet been served as of that time. (Dkt. No. 8 at 7-9, 12, 14, 16, 20). Plaintiffs still had ample time to serve Milovanovic with proper process, but failed to make any attempt to do so.

> FN3. Plaintiffs' Response contains a typo on the first page, indicating the Complaint was filed on July 5, 2006. (Dkt. No. 37 at 1). The Complaint was actually filed on July 5, 2005.

Plaintiffs' explanation for their failure to make further attempts to serve Milovanovic is that Union Pacific "failed to reveal" Milovanovic's address to them. (Dkt. No. 37 at 2). Federal courts require more than this type of half-hearted effort to serve defendants who are named in federal cases. In *Geiger v. Allen*, the plaintiff asked the defendant's former employer (and codefendant) for the defendant's address, in addition to making "one fruitless inquiry to the Secretary of State."*Geiger,* 850 F.3d at 331, 333. The Seventh Circuit considered these efforts "less than diligent" and affirmed the district court's determination that the plaintiff had failed to show good cause, noting the plaintiff "was obligated to pursue alternative methods of finding and serving [the defendant]."*Id.* at 333-34.In this case, there is no indication that Plaintiffs ever even asked Union Pacific for Milovanovic's address. Additionally, it does not appear that Milovanovic was in any way difficult to find or serve. *Cf. Coleman,* 290 F.3d at 935 ("If a defendant is a natural person, the service of process is easy. It gets a bit more complicated when the defendant is a corporation. When the defendant is a governmental entity, the service of process can get very tricky .") (Evans, J., dissenting). Plaintiffs' statements in their Response reveal that, once they began the search for Milovanovic in earnest, it took at most seventeen days to effect service of process. (Dkt. No. 37 at 2 (alleged notice of need to serve Milovanovic occurred on June 20, 2006; service was successfully effected on July 6, 2006)). Plaintiffs' approach of waiting for Union Pacific to supply them with Milovanovic's information, while doing nothing to follow-up on their defective service of process, does not represent the kind of diligence required by Rule 4(m), and Plaintiffs have not demonstrated good cause for their lack of initiative.

*3 Plaintiffs argue that their negligence in delaying service on Milovanovic should be excused because Union Pacific's counsel failed to state that he was not also representing Milovanovic. (Dkt. No. 37 at 2). Plaintiffs do not point to any specific instances wherein Union Pacific's counsel claimed to represent Milovanovic, and the court can find no such indication in the federal record.[FN4]While counsel is required by Local Rule 83.16 to file an appearance before this court, counsel's duty is fulfilled upon indicating the name of the defendant he is representing; he has no affirmative duty to note defendants whom he does not represent. Plaintiffs do not allege, and the court can find no indication that Milovanovic was evasive or concealed a defect in attempted service. Therefore, Plaintiffs have not shown good cause for their failure to properly serve him.[FN5]

> FN4. Although the docket entry for Union Pacific's Attorney Appearance, (Dkt. No. 3), erroneously states Cushing's appearance "for defendants Union Pacific Railroad, Dan Milovanovic," this entry was made by a clerk of the court, as was the case caption listing Cushing as Milovanovic's attorney. The Attorney Appearance itself, however, along with every other document filed by Cushing, clearly indicates his intent to represent only Union Pacific. (*See* Dkt. Nos. 3, 5, 8, 9, 24;*see also* Ex. A, Dkt. No. 34). Plaintiffs have not asserted that they suffered any confusion based on the language of the docket entry, which linked to the correct Attorney Appearance form.

> FN5. Once Milovanovic was eventually served with process, he retained Cushing to represent him in this case. Cushing's current representation of both Union Pacific and Milovanovic does not impact the court's determination of whether Plaintiffs effectively served Milovanovic with process.

The court's inquiry does not end here. Where a plaintiff has not established good cause for failure to serve a defendant, the court must next inquire into the factors indicating whether a permissive extension of time for service may be warranted. *Panaras,* 94 F.3d at 341. The first factor to consider in this case is

Slip Copy                                                                                          Page 4
Slip Copy, 2006 WL 2853597 (N.D.Ill.)
**2006 WL 2853597 (N.D.Ill.)**

whether the applicable statutes of limitations will bar Plaintiffs from relitigating their claims against Milovanovic, thus causing the dismissal to function as though made with prejudice. *See, e.g., Coleman,* 290 F.3d at 934. The applicable statute of limitations for Plaintiffs' defamation claim is one year. 735 Ill. Comp. Stat. 5/13-201. The statute of limitations for Plaintiffs' remaining personal injury claims is two years. 735 Ill. Comp. Stat. 5/13-202; [FN6] *see also Feltmeier v. Feltmeier,* 798 N.E.2d 75, 85 (Ill.2003) (personal injury two-year statute of limitations applies to intentional infliction of emotional distress claim).

> FN6. Section 13-202 states, in relevant part, "Actions for damages for an injury to the person, or for false imprisonment ... shall be commenced within 2 years after the establishment of such account."735 Ill. Comp. Stat. 5/13-202.

Plaintiffs generally contend that their causes of action against Milovanovic did not accrue on the date of their arrests, July 6, 2004, but Plaintiffs fail to name specific dates on which they believe their claims did accrue. (Dkt. No. 37 at 4-5). The court need not determine whether the statutes of limitations have actually expired on any of Plaintiffs' claims, as it gives the Plaintiffs the benefit of the doubt in conceding that most, if not all, of Plaintiffs' claims against Milovanovic will likely be barred from future litigation if the court dismisses the claims against Milovanovic for insufficiency of service of process under Rule 12(b)(5). The court also notes that it is likely that Milovanovic had actual notice of the case against him, as the charges against Union Pacific were based on Milovanovic's participation in the events of July 6, 2004, and discovery in the case against Union Pacific would have necessitated Milovanovic's involvement.

These considerations do not persuade the court that Plaintiffs should be allowed the extended period of time they took without court permission to serve Milovanovic. Plaintiffs have been represented by counsel throughout this litigation, and the Seventh Circuit has warned "[a]n attorney who files suit when the statute of limitations is about to expire must take special care to achieve timely service of process, because a slip-up is fatal."*Tuke,* 76 F.3d at 156. This case was set for trial on October 30, 2006, a date that

was vacated upon the filing of Milovanovic's Motion to Dismiss. (Order of July 31, 2006 (Dkt. No. 36)). Bringing Milovanovic into the case at this late time, after discovery between Plaintiffs and Union Pacific has been completed, could very well prejudice Milovanovic's ability to defend himself in this lawsuit.

*\*4 Considering the impact on all parties, the court finds no basis for excusing Plaintiffs from their duty to comply with the time frame set forth in Rule 4(m) and their duty to remain diligent in their efforts to serve all defendants in this case. Plaintiffs made virtually no attempt to serve Milovanovic, a defendant showing no signs of being either evasive or hard to discover, nor do Plaintiffs adequately explain this failure. Rule 4(c) clearly states "The plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m)."Fed.R.Civ.P. 4(c). Plaintiffs have shirked their responsibility. "[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections."*Henderson v. United States,* 517 U.S. 654, 672 (1996). Allowing Plaintiffs to wait over a year after filing their Complaint before they serve one of the named defendants simply does not afford Milovanovic with the type of procedural safeguard the Federal Rules of Civil Procedure were designed to protect.

*CONCLUSION*

Because Plaintiffs failed to effect service of process on Milovanovic within 120 days of the filing of their Complaint, as required under Rule 4(m), Plaintiffs did not demonstrate good cause for this failure, and because the court, in its discretion, finds no reason to extend the time for service of process on Milovanovic, Milovanovic's Motion to Dismiss is granted, and Counts II, IV, VI, VIII, X, and XII are dismissed without prejudice. The court makes no comment on the application of the statute of limitations. The remaining parties are encouraged to discuss settlement. The case is set for a report on status at 9:00 a.m. on October 17, 2006.

N.D.Ill.,2006.
Brooks v. Union Pacific R.R.
Slip Copy, 2006 WL 2853597 (N.D.Ill.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 5
Slip Copy, 2006 WL 2853597 (N.D.Ill.)
**2006 WL 2853597 (N.D.Ill.)**


END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1343629 (N.D.Ill.)
**2006 WL 1343629 (N.D.Ill.)**

Page 1

**C**Jeffries v. Dutton & Dutton, P.C.
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
James JEFFRIES, Plaintiff.
v.
DUTTON & DUTTON P.C., et al., Defendants.
No. 05 C 4249.

May 11, 2006.

James Jeffries, Chicago, IL, pro se.
Ralph T. Wutscher, Craig C. Smith, Noonan &
Lieberman, LTD., Jason A. Newman, Hauselman &
Rappin, LTD. Panos T. Topalis, Tribler Orpett and
Meyer, P.C., Ira T. Nevel, Attorney at Law, Michael
Adam Grant, Steven A. Levy, Goldberg, Kohn, Bell,
Black, Rosenbloom & Moritz, LTD., Aaron David
Spira, Chicago, IL, Barbara J. Dutton, Dutton &
Dutton, Frankfort, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

VIRGINIA M. KENDALL, District Judge.
*1 James Jeffries brings this action under the federal
Fair Debt Collection Practices Act ("FDCPA"),
Illinois Collection Agency Act ("ICAA"), Fair Credit
Billing Act ("FBCA"), Fair Credit Reporting Act
("FCRA"), Real Estate Settlement Procedures Act
("RESPA"), and Federal Trade Commission Act
("FTC Act"), based on Defendants' alleged actions
related to the home loan issued on the property
located at 8347 South Prairie Avenue in Chicago,
Illinois. Plaintiff asserts these causes of action against
several law offices and their attorneys, the bank who
issued him a loan on the property-Fremont
Investment and Loan ("Fremont"), the company
servicing that loan, and the Mortgage Electronic
Registration Systems, Inc. ("MERS") (collectively,
"Defendants").

Most of the Defendants have moved to dismiss
Plaintiff's Complaint under Rule 4(m), Rule 12(b)(5)
and Rule 12(b)(6). Fremont has moved for summary
judgment under Rule 56. In his consolidated response
to Defendants' motions to dismiss and for summary

judgment, Plaintiff alleges claims under several
additional statutes-the Illinois Consumer Fraud and
Deceptive Practice Act ("ICFA") as well as 18
U.S.C. §§ 241, 242, 1342, 1343 and 42 U.S.C. §§
1983, 1985.

Given Plaintiff's pro se status, the fact that he served
Defendants only days after the 120-day period in
Rule 4(m) expired and the potential statute of
limitations consequences of dismissing Plaintiff's
Complaint, this Court denies Defendants' motions to
dismiss under Rule 4(m). As to Defendants' Rule
12(b)(6) motions to dismiss, Plaintiff has met the
notice pleading requirements on his FDCPA claims
and no other reason exists to dismiss those claims at
the Rule 12(b)(6) stage. As to Fremont's motion for
summary judgment, Fremont has established through
undisputed facts that because it is not a debt collector
as defined in the FDCPA, it is entitled to judgment as
a matter of law on Plaintiff's FDCPA claim against it.
Genuine issues of fact exist, however, on Plaintiff's
RESPA claim against Fremont. With these
exceptions, Defendants' motions are granted and
Plaintiff's remaining claims are dismissed. Plaintiff's
motion for judgment as a matter of law under Rule
50(a) is denied.

### Statement of Facts

On or about July 23, 2004, Fremont made two loans
to Jeffries, one secured by a first-lien mortgage and
the other by a second-lien mortgage. See Fremont's
Statement of Undisputed Facts ¶ 3 and Exhibit A. On
July 28, 2004, Plaintiff received a letter from
Fremont welcoming him as a new loan customer and
including payment and customer service information.
See Plaintiff's Response ("Plf.'s Resp."), Ex. 22f. On
August 27, 2004, Plaintiff responded by sending a
number of identical letters addressed to Fremont
Investment & Loan at various addresses. See Plf.'s
Resp., Ex. 23. These letters requested verification of
the debt, cited language from the FCRA and FDBPA,
and threatened legal action for any of numerous
actions listed in the letter as violations of the two
Acts. See Plf.'s Resp., Ex. 23. On October 27, 2004,
Mr. Jeffries filed a Verified Complaint to Quiet Title
against Merscorp. Inc. and Fremont Investment &
Loan in Cook County Circuit Cook. See Fremont's

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1343629 (N.D.Ill.)
**2006 WL 1343629 (N.D.Ill.)**

Memorandum in Support of Summary Judgment ("Fremont Memo"), Ex. E. In that complaint Plaintiff alleged that he was "not aware of any lawfully valid interest or claim that Defendant(s) has against the Plaintiff or the subject property."*Id.* at ¶ 5. MERS, as nominee for Fremont Investment and Loan, filed a cross-complaint to foreclose mortgage.[FN1]*See* Plf's Resp., Ex. 13C. The Cook County Circuit Court dismissed Plaintiff's complaint on April 4, 2005. *See* Fremont Memo, Ex. F. Plaintiff's motion to reconsider was denied on November 28, 2005. *Id.* Plaintiff filed his instant suit in federal court on July 22, 2005 and a verified amended complaint on December 8, 2005.

> FN1. For a short, informative explanation of MERS see R.K. Arnold, "Real Estate Law, Yes, There is Life on MERS," ABA July/Aug 1997, at 32.

#### Federal Rule of Civil Procedure Rule 4(m)

*\*2* Plaintiff filed his Complaint on July 22, 2005. Rule 4(m) allows this Court to dismiss Plaintiff's Complaint if it is not served upon Defendants within 120 days. *See*Fed.R.Civ.P. 4(m). Plaintiff served most Defendants in this case on November 22 and 23-123 and 124 days after the filing of his Complaint. *See* Fremont Memo, Ex. G.

Rule 4(m) allows this Court to extend time for service if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days. Even absent good cause, this Court may grant a plaintiff relief from the consequences of Rule 4(m).[FN2] On this account, a pro se plaintiff deserves heightened protection against any unjust application of the Rule, *Robinson v. America's Best Contacts & Eyeglasses,* 876 F.2d 596, 598 (7th Cir.1989), particularly where Plaintiff's re-filed action could be barred by the statute of limitations. *See* Advisory Committee Notes to Fed.R.Civ.P. 4(m) ("Relief may be justified, for example, if the application statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in the attempted service"). Wherefore, this Court denies Defendants' motions to dismiss under Rule 4(m).

> FN2."The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown ."*See* Advisory Committee Notes to Fed.R.Civ.P. 4(m).

#### Federal Rules of Civil Procedure 12(b)(6) and 56

When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged in the complaint, and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995). A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). In this regard, "[a]ny need to plead facts that, if true, establish each element of a 'cause of action' was abolished by the Rules of Civil Procedure in 1938."*See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994) (stating that "[m]atching facts against legal elements comes later"). Thus, the plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter,* 286 F.3d 437, 439 (7th Cir.2002); *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir.1998). Any conclusions pled, however, must "provide the defendant with at least minimal notice of the claim."*Kyle,* 144 F.3d at 455;*see Sanjuan,* 40 F.3d at 251 ("One pleads a 'claim for relief' by briefly describing the events").

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56.(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U .S. 242, 255 (1986); *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir.2001).

*\*3* For the reasons explained below, all of Plaintiff's causes of action are dismissed against all Defendants except that he may maintain a cause of action under RESPA against Fremont and FDCPA claims against

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1343629 (N.D.Ill.)
**2006 WL 1343629 (N.D.Ill.)**

all Defendants except Fremont.[FN3]

> FN3. Plaintiff's claims against MERS and Fremont are not barred under the doctrine of res judicata by the state court's dismissal of his action to quiet title. The issues in this action focus on the propriety of the debt collection procedures, rather than the validity of the lien against the property. See _Whitaker v. Ameritech Corp., 129 F.3d 952, 957-58 (7th Cir.1997)_ (holding that debt collector "should also expect that its obligation to comport with other law in its debt collection practices is not extinguished when a court determines that a debt is valid"). MERS and Fremont, however, are not prevented from arguing in future motions that Plaintiff is collaterally estopped from arguing any issues actually litigated and decided in the state court action.

**Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, _et seq._ ("FDCPA")**

Plaintiff has pled sufficiently his FDCPA claims. Plaintiff sprinkles just enough facts among his legal conclusions to provide Defendants with notice of the claims against them and to survive the liberal notice pleading standard of the Federal Rules. Several Defendants, however, raise arguments that could preclude any suit or recovery against them under any set of facts alleged. Defendant Steven C. Lindberg argues that as a member of an Illinois limited liability corporation, he cannot be held personally liable unless the LLC's Articles of Incorporation provide for individual member liability. See 805 ILCS 180/10-10. Plaintiff attaches an affidavit swearing that the Articles of Organization of Freedman Anselmo Lindberg and Rappe, LLC, do not provide that members are liable for debts, liabilities or obligations of the Company. But Defendant Lindberg has not provided any reason why this Court should consider his affidavit, which is outside of the Complaint, on a motion to dismiss. See _Carter v. Stanton, 405 U.S. 669, 671 (1972)_. Similarly, the Court cannot accept CT & T Center's contention that it is a building and not a law firm, a statement contrary to the allegations in the Complaint, as grounds for dismissal under Rule 12(b)(6).

Most of Defendants' arguments though rely solely on Plaintiff's failure to plead specific facts in support of his claims. Defendant Norum, for example, complains that she "should not be made to guess as to what debt Plaintiff is referring."The Court easily can discern from the Complaint that Plaintiff complains about Defendants' actions related to the home mortgage loan issued by Fremont Investment and Loan, such notice is all the Federal Rules require. See _Sanjuan,_ 40 F.3d at 251.

A significant number of Plaintiff's allegations involve letters he sent to Defendants to which he allegedly received no response. Section 1692g(b) gives debt collectors two options when they receive requests for validation; debt collectors "may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities."_Jang v. A.M. Miller and Associates, 122 F.3d 480, 483 (7th Cir.1997)_. As to some Defendants, Plaintiff has alleged only that he requested and did not receive validation, not that the Defendant nevertheless continued its collection activities. First, it is not true as certain Defendants argue that failing to respond to an unsolicited letter cannot state a cause of action. Under the FDCPA, if a consumer disputes a debt in writing, then "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtain verification of the debt or a copy of a judgment, ... and a copy of such verification or judgment ... is mailed to the consumer by the debt collector."15 U.S.C. § 1692g(b). Second, while Plaintiff ultimately must prove that Defendants continued their collection efforts despite their failure to validate the debt, he need not plead facts supporting every element to survive a motion to dismiss. See _Kyle,_ 144 F.3d at 455; _Sanjuan,_ 40 F.3d at 251. Given the facts alleged, Defendants have notice of the claims against them and it does not appear beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief.

*4 As to Fremont's motion for summary judgment, because no genuine issue of material fact exists that Fremont is not a debt collector under FDCPA, but rather a creditor, Fremont is entitled to judgment as a matter of law. The FDCPA applies to debt collectors, not creditors. See _Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1059 (7th Cir.2000)_. Fremont extended the credit to Plaintiff creating the debt at issue and it is Fremont to whom

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1343629 (N.D.Ill.)
**2006 WL 1343629 (N.D.Ill.)**

the debt is owed. *See*15 U.S.C. § 1692a(6) (defining a debt collector as any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"); 15 U.S.C. § 1692a(4) (defining creditor as any person who "offers or extends credit creating a debt or to whom a debt is owed"). Thus, because the undisputed material facts show that Fremont is a creditor and not a debt collector, Plaintiff's FDCPA claim against Fremont must be dismissed.

**Real Estate Settlement Procedures Act, 15 U.S.C. § 2601, *et seq.* ("RESPA")**

RESPA requires that a loan servicer respond to a borrower's qualified written request for information related to the servicing of the loan. 12 U.S.C. § 2605(e). Plaintiff alleges that Fremont violated RESPA by continuing to report negatively to credit reporting agencies after Plaintiff sent a request for information to which Fremont did not respond. *See* Compl. ¶¶ 26-27.Section 2605(e)(3) states that "[d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency."15 U.S.C. § 2605(e)(3). Fremont responds that Plaintiff has not established that he sent a qualified written request or that Fremont is a loan servicer under RESPA.

A qualified written request enables the servicer to identify the name and account of the borrower and includes a statement of sufficient detail regarding the information sought by the borrower. *See*12 U.S.C. § 2605(e)(1)(b). Although not pled as a "qualified written request," Plaintiff's letters written to Fremont and attached as exhibits to Plaintiff's response to the motion for summary judgment are seeking verification of the real estate loan issued by Fremont Investment and Loan and therefore constitute a qualified written request. *See* Exhibit 23; *Ploog v. HomeSide Lending, Inc.,* 209 F.Supp.2d 863, 868 (N.D.Ill.2002).

At this point, a genuine issue of facts also exists as to whether Fremont is a loan servicer under RESPA. With certain exclusions not applicable to Fremont,

"the term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."12 U.S.C. § 2605(i)(2). Explained further, "[t]he term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan."12 U.S.C. § 2605(i)(3). In correspondence to Plaintiff, Fremont states that payment should be sent to: "Fremont Investment & Loan, P.O. Box 14242, Orange, CA. 92863."*See* Exhibit 22f. Accordingly, a genuine issue of fact exists as to whether Fremont serviced the loan by receiving scheduled periodic payments from Plaintiff.

**\*5** Fremont's motion for summary judgment has been filed prior to discovery in this case, perhaps evidence developed in discovery will resolve these disputed facts. *See Jamison-Bey v. Thieret,* 867 F.2d 1046, 1048 (7th Cir.1989) (finding summary judgment premature where facts were not sufficiently developed in pro se case). But given the evidence currently before the Court, genuine issues of fact exist regarding Plaintiff's RESPA claim against Fremont.

**Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA")**

"The FCRA places various requirements on consumer credit reporting agencies, furnishers of credit information to consumer credit reporting agencies, and users of consumer credit reports."*See Ayers v. Equifax Information Services,* 2003 WL 23142201, *2-3 (E.D.Va.2003). Plaintiff alleges that Fremont furnished inaccurate information to credit reporting agencies and failed to investigate his dispute of the debt. Sections 1681n and 1681o allow a consumer to pursue a private right of action for violations of the Act. *See*15 U.S.C. § 1681n (providing remedies for willful violations of the Act); 15 U.S.C. § 1681o (providing remedies for negligent violations of the Act). Section 1681s-2 is the only section of the FCRA that applies to furnishers of consumer information to credit reporting agencies.

Subsection § 1681s-2(a) requires furnishers of credit information to provide credit reporting agencies with accurate and complete information. Subsections (c) and (d) provide, however, that this requirement may be enforced only by government officials and that

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1343629 (N.D.Ill.)
**2006 WL 1343629 (N.D.Ill.)**

consumers are prohibited from bringing a cause of action based upon any failure to comply with subsection (a).[FN4]

> FN4.15 U.S.C. § 1681s-2(c) states: "Sections 1681n and 1681o of this title do not apply to any failure to comply with subsection (a) of this section, except as provided in section 1681(c)(1)(B) of this title."Section 1681s(c)(1)(B) lists the remedies available to suits brought by state officers, as opposed to private consumers, for negligent or willful violations of § 1681s-2.

> 15 U.S.C. § 1681s-2(d) states: "Subsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section."

Subsection 1681s-2(b) of the FCRA requires a furnisher of information to conduct an investigation with respect to any disputed consumer information and report the results of that investigation to the credit reporting agency. Some courts have found that subsection (b) creates a private right of action for credit reporting agencies only, not consumers, against furnishers of information. *See Carney v. Experian Info. Solutions,* 57 F.Supp.2d 496, 502 (W.D. Tenn 1993) (concluding that duties imposed on the furnisher exist solely for the benefit of consumer reporting agencies because it is the consumer reporting agency and not the furnisher of information that faces liability under the FCRA to the consumer for erroneous and inaccurate reporting).

Even those courts that have recognized a private right of action for consumers under subsection (b) have held that "[t]he duties created by subsection (b) arise only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information."*Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 925 (N.D.Ill.2000).[FN5] Thus, assuming that § 1681s-2(b) provides a private right of action, the consumer must register his dispute with the credit reporting agency who then has the responsibility under § 1681i(a)(2) to pass information regarding the dispute on to the information furnisher. *See Nelson v. Chase*

*Manhattan Mortgage Co.,* 282 F.2d 1057, 1060 (9th Cir.2002) (describing the filter set up by Congress to prevent furnishers of information from being sued by every dissatisfied consumer). Accordingly, the information furnisher's obligation to investigate and report is not triggered when a consumer contacts directly the creditor about a dispute. *See Dumas v. Dovenmuehle Mortgage, Inc.,* 2005 WL 1528262 (N.D.Ill.2005) (holding that plaintiff must show that the furnisher received notice from a credit reporting agency, not the consumer, that the credit information is disputed). Because Plaintiff has not alleged that he noticed the credit reporting agency of a dispute or that the credit reporting agency notified Fremont about inaccurate or incomplete information, Plaintiff has failed to plead adequately a cause of action under the FCRA and the claim is dismissed.

> FN5. Once a furnisher has received such notice, it then must:

> > (A) conduct an investigation with respect to the disputed information;

> > (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

> > (C) report the results of the investigation to the consumer reporting agency; and

> > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

> 15 U.S.C. § 1681s-2(b)(1)(A-D).

**Fair Credit Billing Act, 15 U.S.C. § 1666, et seq. ("FBCA")**

*6 The FBCA and its implementing regulation,"Regulation Z," 12 C.F.R. § 226.1 et seq., create duties in a creditor to communicate with a consumer and resolve billing differences. Specifically, § 1666's resolution procedures are

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1343629 (N.D.Ill.)
**2006 WL 1343629 (N.D.Ill.)**

Page 6

triggered when a consumer sends the creditor notice of a billing error. That notice must be in writing and include the consumer's name and account number, his belief that the statement contains a billing error, the reasons for his belief, and the amount of the error. *See* 15 U.S.C. § 1666(a)(1), (2), and (3). Plaintiff alleges that Fremont violated § 1666 of the FBCA by reporting negatively his information to a credit reporting agency before fulfilling its statutory dispute resolution duties.

While Fremont qualifies as a creditor under the FCBA because it regularly extends credit in connection with sales of property, the FCBA's billing error section, 15 U.S.C. § 1666, applies solely to creditors of open-end credit plans. *See* 15 U.S.C. 1602(f) (stating that the requirements of "chapter 4 [15 USCS §§ 1666, *et seq.*] ... are by their terms applicable only to creditors offering open-end credit plans"); *Roybal v. Equifax*, 405 F.Supp.2d 1177, 1180 (E.D.Cal.2005) (holding that "the definition of 'creditor' as used in section 1666 only applies to creditors offering open credit plans").

The term "open end credit plan" means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan which is an open end credit plan within the meaning of the preceding sentence is an open end credit plan even if credit information is verified from time to time.

15 U.S.C. § 1602(i). There is no allegation that Fremont reasonably contemplated repeated transactions beyond the initial loans provided to Plaintiff. Thus, because Plaintiff's home loan is not an open-end credit plan, his claim related to billing errors under the FCBA must be dismissed.

### Illinois Collection Agency Act, 225 ILCS 425/1, *et seq.* ("ICAA")

Mentioned only in paragraph 1 of Plaintiff's Complaint, Plaintiff does not cite any specific provisions of the ICAA under which he brings a claim. While the Court construes liberally Plaintiff's pro se complaint, it is not obliged to scour every section of the ICAA searching for a claim that fits the allegations in the Complaint. *See Cook v. Exelon*

*Corp.*, 2002 WL 31133274, *3 (N.D.Ill.2002); *Greer v. Board of Educ. of City of Chicago. Ill.*, 267 F.3d 723, 727 (7th Cir.2001). It is also unfair to Defendants who cannot respond to such an ill-defined cause of action. Beyond Plaintiff's deficient pleading, it is likely that no claim ever could be pled because almost all of the individual and entities defendants in this case are expressly exempt from the ICAA's provisions. *See* 225 ILCS 425/2.03 (stating that the ICAA does not apply to banks, licensed attorneys at law or any person or business under contract with a creditor to notify the creditor's debtors of a debt using only the creditor's name). As such, Plaintiff's ICAA claim is dismissed.

### Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.* ("FTC Act")

*7 Plaintiff asks the Court to enforce civil penalties under § 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), and to issue a permanent injunction under § 13(b) of the FTC Act, 15 U.S.C. § 53(b). Since both sections are enforceable only by the Federal Trade Commission, these claims for relief are dismissed. *See* 15 U.S.C. § 45(m)(1)(A) ("The Commission may commence a civil action to recover a civil penalty in a district court of the United States"); 15 U.S.C. § 53(b) ("[T]he Commission ... may bring suit in a district court of the United States to enjoin any such act or practice").

### Illinois Consumer Fraud and Deceptive Practice Act, 815 ILCS 505 ("ICFA")

Plaintiff raised the possibility of a claim under ICFA for the first time in response to Defendants' motions to dismiss and for summary judgment. Plaintiff did not allege an ICFA claim in his Complaint. A party cannot raise a new claim, effectively amending the complaint, in an opposition to a motion to dismiss. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir.1989) ("It is a basic principle that a complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Hodges v. Nat'l Basketball Ass'n*, 1998 WL 26183, * 3 (N.D.Ill.1998) ("[A] plaintiff may not submit materials in opposition to a motion to dismiss that raise new claims"). Plaintiff's ICFA claim is dismissed.

### Violations of 18 U.S.C. §§ 241, 242; 42 U.S.C. §§ 1983, 1985

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1343629 (N.D.Ill.)
**2006 WL 1343629 (N.D.Ill.)**

Page 7

Similar to Plaintiff's ICFA claim, none of these claims based on alleged violations of the Constitution and civil rights laws were not stated in Plaintiff's Complaint. Moreover, 42 U.S.C. § 1985 requires a conspiracy to interfere with a person's civil rights. Plaintiff has not alleged "some racial, or otherwise class-based, invidiously discriminatory animus" for Defendants' actions as necessary under § 1985. *Griffin v. Breckinridge,* 403 U.S. 88, 102 (1971).Section 1983, in turn, requires that Defendants be acting under "color of law," an allegation that cannot be made against the non-government actors here. *See Kramer v. Village of North Fond du Lac,* 384 F.3d 856, 866 (7th Cir.2004). Finally, 18 U.S.C. §§ 241 and 242 are both criminal statutes under which Plaintiff cannot sue. Accordingly, Plaintiff's claims related to alleged violations of the Constitution or civil rights laws are dismissed.

**18 U.S.C. §§ 1342 (mail fraud) and 1343 (wire fraud)**

Plaintiff's claims alleging mail and wire fraud again must be dismissed because they were not raised in Plaintiff's Complaint and further because they are criminal statutes which provide no cause of action to a private litigant like Plaintiff. *See Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 408 (8th Cir.1999) (finding no congressional intent to create a private right of action for mail or wire fraud).

**Conclusion and Order**

Defendants' motions to dismiss pursuant to Rule 4(m) are denied. Defendants' motions to dismiss under Rule 12(b)(6) for failure to state a claim are granted in part and denied in part. Plaintiff has pled sufficient facts to state a cause of action for violations of the FDCPA against all Defendants. The FDCPA claim against Fremont, however, is dismissed because the undisputed facts produced in its motion for summary judgment show that Fremont acted solely as a creditor and not as a debt collector. Fremont's motion for summary judgment on Plaintiff's RESPA claim is denied because genuine issues of fact exist as to whether Fremont is a loan servicer and whether Plaintiff submitted a qualified written request. Excepting these claims, Defendants' Rule 12(b)(6) motions are granted and Plaintiff's remaining claims are dismissed for the reasons stated in this

memorandum opinion.

**\*8** So ordered.

N.D.Ill.,2006.
Jeffries v. Dutton & Dutton, P.C.
Not Reported in F.Supp.2d, 2006 WL 1343629 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2491633 (N.D.Ill.)
**2004 WL 2491633 (N.D.Ill.)**

**C**Paden v. Testor Corp.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
PADEN
v.
THE TESTOR CORPORATION
No. 03 C 50057.

Nov. 2, 2004.

Joyce Paden, Rockford, IL, pro se.

MEMORANDUM OPINION AND ORDER

REINHARD, J.
**\*1** Plaintiff, Joyce Paden, filed a twocount complaint against defendant, The Testor Corporation, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e*et seq.,* and the Americans with Disabilities Act, 42 U.S.C. § 12101*et seq.* Defendant has moved to dismiss the action, pursuant to Fed.R.Civ.P. 12(b)(5), contending that plaintiff failed to timely effect service under Fed.R.Civ.P. 4(m).

Plaintiff originally filed a *prose* complaint but later retained counsel who sought to file an amended complaint. Plaintiff's attorney appeared before the magistrate judge on several occasions, seeking an extension of the 120-day time limit under Rule 4(m) to serve defendant because of her difficulty in communicating with plaintiff in an effort to prepare and file an amended complaint. Plaintiff's original request (October 29, 2003) for an extension of time to serve defendant was made, and granted, within the 120-day limit. Thereafter, plaintiff sought and received additional extensions, the last of which gave her until August 13, 2004. Plaintiff eventually served defendant on July 28, 2004, within the latest extension period and 265 days past the original 120-day period.

Once defendant was served, it promptly filed a motion to dismiss under Rule 12(b)(5), contending that no good cause existed for extending the time

limit under Rule 4(m) and that no other basis existed for a discretionary extension of the time limit.

This case is somewhat unique in the sense that plaintiff sought an extension of time prior to the 120-day period expiring, as opposed to those situations where the plaintiff did not serve the defendant until after the time had expired and thereafter sought an extension in response to a motion to dismiss, *see,e.g.,Coleman v. Milwaukee Board of School Directors,* 290 F.3d 932 (7th Cir.2002); *Panaras v. Liquid Carbonic Industries Corp.,* 94 F.3d 338 (7th Cir.1996). Thus, defendant is in the position of seeking to challenge the granting of an extension of time under Rule 4(m) which extension was, in fact, complied with.

Additionally, defendant has filed its motion to dismiss with this court even though the magistrate judge granted the extensions. Thus, it must assert a proper basis for overturning the decisions of the magistrate. In that regard, defendant states, without elaboration, that this court's standard of review is *denovo* under Rule 72(b). That would be correct if the decision of the magistrate judge addressed a dispositive pretrial matter such as a motion to dismiss for failing to comply with the time limit of Rule 4(m). In this case, however, the magistrate judge was only called upon to decide whether an extension should be granted under Rule 4(m), a nondispositive pretrial matter, which is governed by the standard of Rule 72(a). Rule 72(a) provides that this court can only set aside a nondispositive pretrial order if it is either clearly erroneous or contrary to law.

**\*2** Keeping this standard in mind, the court turns to the applicable law related to the decision of whether to grant an extension of time under Rule 4(m). While Rule 4(m) itself arguably does not provide for an extension of time prior to a failure to serve a defendant, clearly Rule 6 allows for such an extension prior to the expiration of the time limit set forth in a rule or order of court. Fed.R.Civ.P. 6(b)(1). In such a case, the court may do so "in its discretion" and for "cause shown." Fed Rule Civ. P. 6(b)(1). The issue thus becomes which standard to apply to such an extension, the one under Rule 6(b)(1) or the "good cause" or discretionary standard under Rule

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2491633 (N.D.Ill.)
**2004 WL 2491633 (N.D.Ill.)**

4(m), see *Troxell v. Fedders of North America, Inc.,* 160 F.3d 381, 382-83 (7 th Cir.1998). While the court considers the discretionary standards of Rule 6(b)(1) and Rule 4(m) to be essentially the same, it finds that the decision to extend the time limit, under either standard, was not an abuse of discretion ( and therefore not clearly erroneous or contrary to law).

An abuse of discretion in this context exists only if the decision was arbitrary or unreasonable. *Troxell,* 160 F.3d at 383. This is a hard standard to overcome, especially when the court is simply exercising its judgment about whether to relieve a party from an unexcused failure to comply with the rules, *Troxell,* 160 F.3d at 383. In exercising its discretion, the court is permitted to consider such factors as the statute of limitations, prejudice to the defendant, actual notice of the law suit, and eventual service. *Troxell,* 160 F.3d at 383.

In this case, the relatively short statute of limitations (90 days) favored an extension. There was also no apparent prejudice to defendant, and defendant has identified none. Defendant's vague assertion about potential faded memories does not demonstrate actual prejudice. While defendant may not have had actual notice of this action, it should have been aware of the potentiality having been named in plaintiff's charge of discrimination filed with the EEOC. Further, service was in fact accomplished within the time frame allowed. Additionally, rather than waiting until after the time had expired and she was facing a motion to dismiss, plaintiff (at least her attorney) took a proactive approach by requesting an extension in advance. Another relevant factor in this case is that the original *prose* complaint was lacking in clarity and the need for an amended complaint was apparent. The inclusion of the EEOC charging document did little to clarify the gibberish in plaintiff's original complaint. This situation was exacerbated by the difficulty counsel was having in contacting and communicating with plaintiff. While the court does not condone the extreme delay in completing service in this case, under all of the circumstances, there was no abuse of discretion, under either Rule 6(b)(1) or Rule 4(m), in extending the time for service of process as the magistrate judge did.

**\*3** For the foregoing reasons, the court denies the motion to dismiss.

N.D.Ill.,2004.
Paden v. Testor Corp.
Not Reported in F.Supp.2d, 2004 WL 2491633 (N.D.Ill.)

END OF DOCUMENT

Westlaw.

Slip Copy                                                                                                      Page 1
Slip Copy, 2006 WL 3694855 (N.D.Ill.)
**2006 WL 3694855 (N.D.Ill.)**

**H**Brown v. New York Life Ins. Co.
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Jack BROWN and Jack Brown Buick, Inc., Plaintiffs,
v.
NEW YORK LIFE INSURANCE CO.. et al.,
Defendants.
**No. 06 C 3339.**

Dec. 14, 2006.

Joel C. Zimmerman, Joel C. Zimmerman &
Associates, Ltd., Homewood, IL. Peter J. Miller,
Gordon and Rappold, LLC, Chicago, IL, for
Plaintiffs.
Martin G. Durkin, Karen Elaine Gossman, Suzanne
E. Rollier, Holland and Knight, Brian James Riordan,
Monica Christine Palermo, Clausen Miller P.C.,
Chicago, IL, for Defendants.

### *MEMORANDUM OPINION*

SAMUEL DER-YEGHIAYAN, District Judge.
**\*1** This matter is before the court on Defendant
Curtis Schultz's ("Schultz") motion to dismiss. For
the reasons stated below, we deny the motion to
dismiss.

### BACKGROUND

Plaintiffs Jack G. Brown ("Brown") and Jack Brown
Buick, Inc. ("JBB") allege that they purchased
insurance policies from New York Life Insurance Co.
("NYL") sometime prior to the 1980s. According to
Plaintiffs, in the early 1980s, Schultz, who was
NYL's agent, met with Brown and another JBB
employee to discuss the purchase of new life
insurance policies for JBB. Schultz allegedly
convinced Brown and the other JBB employee to
purchase new policies and to take advantage of a
program offered by NYL called the Premium Offset
Proposal ("POP Program"). Under the POP Program,
Plaintiffs were allegedly required to surrender or
borrow against the value of their existing policies and
use that value to purchase new policies. Schultz

allegedly indicated that the new policies would have
greater death benefits, cash values, and surrender
values than the previous policies. According to
Plaintiffs, Schultz made misrepresentations
concerning how the POP Program operated and also
regarding the benefits that Plaintiffs would receive by
joining the POP Program.

Plaintiffs allege that they regularly paid premiums on
the new policies ("Policies") that were purchased
under the POP Program and believed the Policies
were fully paid up until they received premium
notices in 1999 ("1999 Notices"). Plaintiffs also
claim that between 1999 and 2003 they received
additional notices for premiums. According to
Plaintiffs, each time they received a notice they
contacted Schultz for an explanation. When Plaintiffs
contacted Schultz on each occasion, Schultz allegedly
made further false assurances and contacted NYL to
have the premiums reduced. As a result of Schultz's
alleged misrepresentations, Plaintiffs claim that there
are substantial loans that have been taken against the
Policies, the Policies have little cash value, and the
Policies have little value at the death of an insured
after the payment of outstanding loans. Plaintiffs also
allege that Schultz was trained by NYL to mislead
NYL customers in order to lure customers into the
POP program.

Plaintiffs brought the instant action and include in the
amended complaint a breach of contract claim (Count
I), a fraud claim (Count II), a negligent
misrepresentation claim (Count III), a claim alleging
a violation of the Illinois Consumer Fraud and
Deceptive Business Practices Act ("Fraud Act"), 815
ILCS 505/1*et seq.* (Count IV), and an unjust
enrichment and constructive trust claim (Count V).
Schultz now moves to dismiss the claims brought
against him pursuant to Federal Rule of Civil
Procedure 12(b)(5) due to lack of timely service.

### LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(5),
a defendant can seek a dismissal of the claims
brought against him based upon "insufficiency of
process...." Fed.R.Civ.P. 12(b)(5). Federal Rule of
Civil Procedure 4(m) ( "Rule 4(m)") provides that

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2006 WL 3694855 (N.D.Ill.)
**2006 WL 3694855 (N.D.Ill.)**

"[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time...."Fed.R.Civ.P. 4(m).Rule 4(m) also provides that "if the plaintiff shows good cause for the failure" to serve within the 120 deadline, "the court shall extend the time for service for an appropriate period."*Id.*

## DISCUSSION

*2 Schultz argues that he was not served with the complaint in the instant action in a timely fashion and that Plaintiffs have not shown good cause for failing to serve Schultz in a timely fashion.

### I. *Rule 4(m) 120-Day Deadline*

Schultz contends that Plaintiffs did not serve him with the complaint in the instant action before the Rule 4(m)120-day deadline. Plaintiffs commenced the instant action in state court on May 17, 2006. This action was subsequently removed to federal court and the docket indicates that Schultz was eventually served by Plaintiffs on October 20, 2006. Thus, service upon Schultz was effectuated more than 120 days after the filing of the complaint and was beyond the Rule 4(m)120-day deadline.

### II. *Extension of Service Deadline*

Plaintiffs argue that even if the service upon Schultz was beyond the Rule 4(m)120-day deadline, this court has discretion to grant an extension of the service deadline and Plaintiffs had good cause for serving Schultz beyond the deadline.

### A. *Discretionary Determination By Court*

On October 17, 2006, we determined that October 31, 2006 would be an appropriate deadline for service upon Schultz and informed Plaintiffs that Schultz had to be served by that date. The Seventh Circuit has made clear that "the case law allows the district court to extend the time for service even if there was no good cause for the plaintiff's missing the deadline."*Coleman v. Milwaukee Bd. of Sch. Dirs.,*

290 F.3d 932, 934 (7th Cir.2002); *see also Troxell v. Fedders of North America, Inc.,* 160 F.3d 381, 383 (7th Cir.1998) (stating that "[e]ven if a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service"). In determining whether a court should exercise its discretion and grant an extension for service, a court can consider factors such as "a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service...."*Troxell,* 160 F.3d at 383.

Plaintiffs claim that Schultz was aware of the fact that he was a Defendant in the instant action in June of 2006, shortly after the commencement of this action and well within the Rule 4(m)120-day deadline. Plaintiffs have provided the court with an affidavit of JBB's Vice President, Terrence Brown, indicating that Schultz called Terrence Brown in June 2006 and that at that time Schultz was aware of the lawsuit and "understood why the lawsuit was filed."(Ans.Ex. B. Par. 5-7). Schultz has not denied in his reply brief that he had actual knowledge of the instant action in June 2006, and Schultz argues only that "a defendant's actual knowledge, without proper service, is not excusable...." (Reply 1-4).

Schultz has also failed to provide any reason why he was prejudiced by service upon him on October 20, 2006, arguing only that "Plaintiffs' assertion that there is no prejudice to the Defendant is insufficient to establish good cause nor is it appealing to this Court's discretion."(Mot.1-3); (Reply 1-4). Schultz will not be prejudiced in regards to any discovery deadlines in this case since none have been set yet in this case. Neither is there any other reason to conclude that Schultz would be prejudice by the October 20, 2006 service. Also, this court can set deadlines in accordance with the court's inherent discretion to manage cases on its docket. *See Landis v. North American Co.,* 299 U.S. 248, 254-255, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (stating in regards to staying proceedings that it "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and that "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"). Plaintiffs acted in accordance with this court's management of this case when they addressed NYL's motions to dismiss and

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 3
Slip Copy, 2006 WL 3694855 (N.D.Ill.)
**2006 WL 3694855 (N.D.Ill.)**

when Plaintiffs ultimately served Schultz before the October 31, 2006 deadline. On October 17, 2006, Plaintiffs were given a short two week period to serve Schultz and Plaintiffs promptly served Schultz three days later on October 20, 2006. The decision to uphold the service upon Schultz by October 31, 2006, rather than dismissing the claims against him, also promote judicial economy. If we were to dismiss the claims against Schultz, the dismissal would be without prejudice and Plaintiffs would need to institute a new action against Schultz which would deal with the same facts as in the instant action. Thus, on October 17, 2006, the court acted within its discretion and decided to extend the deadline for service upon Schultz to October 31, 2006. Therefore, Schultz's motion to dismiss for lack of timely service is without merit. In addition, the court notes that Plaintiffs have also shown that they had good cause for the timing of service upon Schultz.

*B. Good Cause*

**\*3** Plaintiffs also argue that they had good cause for serving Schultz on October 20, 2006. A plaintiff has good cause to serve a defendant beyond the Rule 4(m) 120-day deadline if the plaintiff has "a valid reason for delay, such as the defendant's evading service." *Coleman, 290 F.3d at 934*. The only basis for Schultz's contention that Plaintiffs lack good cause for not serving Schultz sooner is the fact that Schultz maintains an office in Homewood, Illinois. (Mot.2). Schultz offers no other reasons as to why Plaintiffs should have served him within the 120-day deadline. (Mot.1-3). Schultz admits that even he is not entirely certain whether Plaintiffs had good cause for the timing of the service, stating that "[i]t does not appear that Plaintiff[s] can show any good cause for the failure to effectuate service."(Mot.2).

Plaintiffs state that after the issuance of a summons for Schultz on May 17, 2006, the Sheriff of Cook County, Illinois attempted to serve Schultz, but was unable to effectuate service. Plaintiffs contend that on June 20, 2006, NYL removed the instant action to federal court and on June 27, 2006, NYL filed a motion to dismiss. Plaintiffs argue that they then focused on NYL's motion to dismiss rather than service upon Schultz because if the motion to dismiss was granted, "service upon ... Schultz would have been unnecessary and moot."(Ans.3). On August 24, 2006, Plaintiffs were given leave to file an amended

complaint and NYL then filed a second motion to dismiss. On October 17, 2006, we denied NYL's second motion to dismiss and gave Plaintiffs until October 31, 2006, to serve Schultz. Plaintiffs then served Schultz on October 20, 2006. In refraining from serving Schultz until NYL's motion to dismiss was resolved, Plaintiffs counsel properly avoided the possible wasting of their clients' resources by attempting further service upon Schultz. Plaintiffs also acted with this court's approval and in accordance with this court's management of these proceedings. When this court determined that service upon Schultz should proceed, we provided Plaintiffs with a final deadline and Plaintiffs complied. We thus conclude that Plaintiffs had a valid reason for serving Schultz on October 20, 2006 and had good cause to do so. Therefore, based on the above, we deny Schultz's motion to dismiss.

### CONCLUSION

Based on the foregoing analysis, we deny Schultz's motion to dismiss.

N.D.Ill.,2006.
Brown v. New York Life Ins. Co.
Slip Copy, 2006 WL 3694855 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.