**EXHIBIT F**

**Westlaw.**

Slip Copy  
Slip Copy, 2006 WL 3694855 (N.D.Ill.)

Page 1

**H** Brown v. New York Life Ins. Co.  
N.D.Ill.,2006.  
Only the Westlaw citation is currently available.  
United States District Court,N.D. Illinois,Eastern Division.  
Jack BROWN and Jack Brown Buick, Inc., Plaintiffs,  
v.  
NEW YORK LIFE INSURANCE CO., et al., Defendants.  
No. 06 C 3339.

Dec. 14, 2006.

Joel C. Zimmerman, Joel C. Zimmerman & Associates, Ltd., Homewood, IL, Peter J. Miller, Gordon and Rappold, LLC, Chicago, IL, for Plaintiffs.  
Martin G. Durkin, Karen Elaine Gossman, Suzanne E. Rollier, Holland and Knight, Brian James Riordan, Monica Christine Palermo, Clausen Miller P.C., Chicago, IL, for Defendants.

*MEMORANDUM OPINION*

SAMUEL DER-YEGHIAYAN, District Judge.  
*1 This matter is before the court on Defendant Curtis Schultz's ("Schultz") motion to dismiss. For the reasons stated below, we deny the motion to dismiss.

BACKGROUND

Plaintiffs Jack G. Brown ("Brown") and Jack Brown Buick, Inc. ("JBB") allege that they purchased insurance policies from New York Life Insurance Co. ("NYL") sometime prior to the 1980s. According to Plaintiffs, in the early 1980s, Schultz, who was NYL's agent, met with Brown and another JBB employee to discuss the purchase of new life insurance policies for JBB. Schultz allegedly convinced Brown and the other JBB employee to purchase new policies and to take advantage of a program offered by NYL called the Premium Offset Proposal ("POP Program"). Under the POP Program, Plaintiffs were allegedly required to surrender or borrow against the value of their existing policies and use that value to purchase new policies. Schultz allegedly indicated that the new policies would have greater death benefits, cash values, and surrender values than the previous policies. According to Plaintiffs, Schultz made misrepresentations concerning how the POP Program operated and also regarding the benefits that Plaintiffs would receive by joining the POP Program.

Plaintiffs allege that they regularly paid premiums on the new policies ("Policies") that were purchased under the POP Program and believed the Policies were fully paid up until they received premium notices in 1999 ("1999 Notices"). Plaintiffs also claim that between 1999 and 2003 they received additional notices for premiums. According to Plaintiffs, each time they received a notice they contacted Schultz for an explanation. When Plaintiffs contacted Schultz on each occasion, Schultz allegedly made further false assurances and contacted NYL to have the premiums reduced. As a result of Schultz's alleged misrepresentations, Plaintiffs claim that there are substantial loans that have been taken against the Policies, the Policies have little cash value, and the Policies have little value at the death of an insured after the payment of outstanding loans. Plaintiffs also allege that Schultz was trained by NYL to mislead NYL customers in order to lure customers into the POP program.

Plaintiffs brought the instant action and include in the amended complaint a breach of contract claim (Count I), a fraud claim (Count II), a negligent misrepresentation claim (Count III), a claim alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Fraud Act"), 815 ILCS 505/1 *et seq.* (Count IV), and an unjust enrichment and constructive trust claim (Count V). Schultz now moves to dismiss the claims brought against him pursuant to Federal Rule of Civil Procedure 12(b)(5) due to lack of timely service.

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(5),

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy                                                                                                                      Page 2
Slip Copy, 2006 WL 3694855 (N.D.Ill.)

a defendant can seek a dismissal of the claims brought against him based upon "insufficiency of process...." Fed.R.Civ.P. 12(b)(5). Federal Rule of Civil Procedure 4(m) ( "Rule 4(m)") provides that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time...."Fed.R.Civ.P. 4(m).Rule 4(m) also provides that "if the plaintiff shows good cause for the failure" to serve within the 120 deadline, "the court shall extend the time for service for an appropriate period."*Id.*

## DISCUSSION

*2 Schultz argues that he was not served with the complaint in the instant action in a timely fashion and that Plaintiffs have not shown good cause for failing to serve Schultz in a timely fashion.

*I. Rule 4(m)120-Day Deadline*

Schultz contends that Plaintiffs did not serve him with the complaint in the instant action before the Rule 4(m)120-day deadline. Plaintiffs commenced the instant action in state court on May 17, 2006. This action was subsequently removed to federal court and the docket indicates that Schultz was eventually served by Plaintiffs on October 20, 2006. Thus, service upon Schultz was effectuated more than 120 days after the filing of the complaint and was beyond the Rule 4(m)120-day deadline.

*II. Extension of Service Deadline*

Plaintiffs argue that even if the service upon Schultz was beyond the Rule 4(m)120-day deadline, this court has discretion to grant an extension of the service deadline and Plaintiffs had good cause for serving Schultz beyond the deadline.

*A. Discretionary Determination By Court*

On October 17, 2006, we determined that October 31, 2006 would be an appropriate deadline for service upon Schultz and informed Plaintiffs that Schultz had to be served by that date. The Seventh Circuit has made clear that "the case law allows the district court to extend the time for service even if there was no good cause for the plaintiff's missing the deadline."*Coleman v. Milwaukee Bd. of Sch. Dirs., 290 F.3d 932, 934 (7th Cir.2002); see also Troxell v. Fedders of North America, Inc., 160 F.3d 381, 383 (7th Cir.1998)* (stating that "[e]ven if a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service"). In determining whether a court should exercise its discretion and grant an extension for service, a court can consider factors such as "a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service...."*Troxell, 160 F.3d at 383.*

Plaintiffs claim that Schultz was aware of the fact that he was a Defendant in the instant action in June of 2006, shortly after the commencement of this action and well within the Rule 4(m)120-day deadline. Plaintiffs have provided the court with an affidavit of JBB's Vice President, Terrence Brown, indicating that Schultz called Terrence Brown in June 2006 and that at that time Schultz was aware of the lawsuit and "understood why the lawsuit was filed."(Ans.Ex. B. Par. 5-7). Schultz has not denied in his reply brief that he had actual knowledge of the instant action in June 2006, and Schultz argues only that "a defendant's actual knowledge, without proper service, is not excusable...." (Reply 1-4).

Schultz has also failed to provide any reason why he was prejudiced by service upon him on October 20, 2006, arguing only that "Plaintiffs' assertion that there is no prejudice to the Defendant is insufficient to establish good cause nor is it appealing to this Court's discretion."(Mot.1-3); (Reply 1-4). Schultz will not be prejudiced in regards to any discovery deadlines in this case since none have been set yet in this case. Neither is there any other reason to conclude that Schultz would be prejudice by the October 20, 2006 service. Also, this court can set deadlines in accordance with the court's inherent discretion to manage cases on its docket. *See Landis v. North American Co., 299 U.S. 248, 254-255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)* (stating in regards to staying proceedings that it "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and that "[h]ow this can best be done calls for the exercise of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

judgment, which must weigh competing interests and maintain an even balance"). Plaintiffs acted in accordance with this court's management of this case when they addressed NYL's motions to dismiss and when Plaintiffs ultimately served Schultz before the October 31, 2006 deadline. On October 17, 2006, Plaintiffs were given a short two week period to serve Schultz and Plaintiffs promptly served Schultz three days later on October 20, 2006. The decision to uphold the service upon Schultz by October 31, 2006, rather than dismissing the claims against him, also promote judicial economy. If we were to dismiss the claims against Schultz, the dismissal would be without prejudice and Plaintiffs would need to institute a new action against Schultz which would deal with the same facts as in the instant action. Thus, on October 17, 2006, the court acted within its discretion and decided to extend the deadline for service upon Schultz to October 31, 2006. Therefore, Schultz's motion to dismiss for lack of timely service is without merit. In addition, the court notes that Plaintiffs have also shown that they had good cause for the timing of service upon Schultz.

*B. Good Cause*

**\*3** Plaintiffs also argue that they had good cause for serving Schultz on October 20, 2006. A plaintiff has good cause to serve a defendant beyond the Rule 4(m) 120-day deadline if the plaintiff has "a valid reason for delay, such as the defendant's evading service."*Coleman,* 290 F.3d at 934. The only basis for Schultz's contention that Plaintiffs lack good cause for not serving Schultz sooner is the fact that Schultz maintains an office in Homewood, Illinois. (Mot.2). Schultz offers no other reasons as to why Plaintiffs should have served him within the 120-day deadline. (Mot.1-3). Schultz admits that even he is not entirely certain whether Plaintiffs had good cause for the timing of the service, stating that "[i]t does not appear that Plaintiff[s] can show any good cause for the failure to effectuate service."(Mot.2).

Plaintiffs state that after the issuance of a summons for Schultz on May 17, 2006, the Sheriff of Cook County, Illinois attempted to serve Schultz, but was unable to effectuate service. Plaintiffs contend that on June 20, 2006, NYL removed the instant action to federal court and on June 27, 2006, NYL filed a motion to dismiss. Plaintiffs argue that they then focused on NYL's motion to dismiss rather than service upon Schultz because if the motion to dismiss was granted, "service upon ... Schultz would have been unnecessary and moot."(Ans.3). On August 24, 2006, Plaintiffs were given leave to file an amended complaint and NYL then filed a second motion to dismiss. On October 17, 2006, we denied NYL's second motion to dismiss and gave Plaintiffs until October 31, 2006, to serve Schultz. Plaintiffs then served Schultz on October 20, 2006. In refraining from serving Schultz until NYL's motion to dismiss was resolved, Plaintiffs counsel properly avoided the possible wasting of their clients' resources by attempting further service upon Schultz. Plaintiffs also acted with this court's approval and in accordance with this court's management of these proceedings. When this court determined that service upon Schultz should proceed, we provided Plaintiffs with a final deadline and Plaintiffs complied. We thus conclude that Plaintiffs had a valid reason for serving Schultz on October 20, 2006 and had good cause to do so. Therefore, based on the above, we deny Schultz's motion to dismiss.

## CONCLUSION

Based on the foregoing analysis, we deny Schultz's motion to dismiss.

N.D.Ill.,2006.
Brown v. New York Life Ins. Co.
Slip Copy, 2006 WL 3694855 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.